Case No. 16-7004 National Railroad Passenger Corporation v. Fraternal Order of Police, Lodge 189 Labor Committee Appellant Mr. Cushane for the appellant, Mr. Reinert for the appellee May it please the court, Thomas A. Cushane appearing on behalf of the appellant. With the court's indulgence, I'd like to reserve three minutes for rebuttal. This case centers around statutory independence of the Office of the Inspector General at its core, and the FOP submits that nothing that the arbitrator did below in this labor case is impinged in any way upon the statutory independence of the Inspector General. And the reason for that is, as the statutory framework tells us, the role of the Inspector General is limited to conducting audits and investigations and reporting the results, I emphasize the word reporting, those results of the investigation to the agency head. That was done in this case, and it would be done if this court were to reverse the judgment of the district court and reinstate the arbitrator's opinion. And I say that because, again, the only thing that the Congress was concerned with was ensuring that the Inspector General could conduct investigations the way it sees fit. And the FOP acknowledges that freely throughout its briefing and has never wavered from that stance. But the reason there's a distinction here is because the Council of the Inspectors General on Integrity and Efficiency, also known as the CIGI, promulgates through an act of Congress. On those standards, I need to disaggregate the various arguments that are going on here. And on those standards, it seems to me you would still be open when it goes back to the arbitrator to raise that argument. And the arbitrator may say it's too late, I don't know what the arbitrator will say. But in other words, I don't know that that argument is done yet before the arbitrator. Admittedly, Judge Kavanaugh, it has not been done. And that's one of the unique positions about this case. In fact, there were many things that weren't done before the arbitrator because the arbitrator focused solely on… If it were to go back to the arbitrator per the district court's judgment, the arbitrator could consider a variety of arguments that you all would have raised that were not reached before, including, I think, that one. That is correct, Your Honor. And in fact, at the very minimum, if this court should not be inclined to reverse the judgment of the district court, the FOP would urge that it should at least remand it to the arbitrator to consider the arguments, particularly because why? Because the primary case upon which… Sorry to interrupt. The only thing before us, I think, is the Rule 50 standard. And on that, how do we – how do you propose we deal with our precedent in the DHS case? Well, I was about to say, Your Honor, that it's interesting because that case, as this court is aware, came out in 2014, which was after the arbitrator issued her word. Is that decision – I mean, you're right. It came out afterwards, and another possibility is remanding for the arbitrator to consider that decision. But my question is, is that opinion binding on the arbitrator, too? Is DHS binding? Yeah. Well, certainly, it would be binding, and it would certainly provide guidance. The arbitrator sits where? In Philadelphia? Yes. And this is a D.C. circuit? Yes, but it's under the Railway Labor Act, over which this court has jurisdiction. Third Circuit decides cases under the Railway Labor Act, too. I just don't know the answer to that. I was wondering, why is this case here? The arbitration took place in Philadelphia. It could have gone to the Third Circuit. It could have gone to district court there. My presumption – I was not counsel at the case when it was tried before the arbitrator. I want to make that clear to this court. I only entered into the case after the case had been decided, and there was an appeal that was about to take place. It was Amtrak, the corporation, that filed the appeal in the district court for the District of Columbia. I cannot speak to the reasons why. Perhaps my colleague would be able to explain that when it's his turn. I can say, however, that – In the district court? What's the jurisdictional basis for the district court hearing this? In this court? Yeah. It would be under the Railway – In the district court. Well, it's quite simply an appeal of an arbitration award, which would be heard in the district court, and it would be venued presumably in this court because it's under the Railway Labor Act. But it's reviewing an arbitration that took place in a different jurisdiction. Well, it took place in a different jurisdiction, but I should just point out to the court that the National Railroad Passenger Corporation, which does business as Amtrak, is a nationwide organization. It's not confined to just one circuit. It is a railway. It has tens of thousands of employees and tens of thousands of track that run throughout the continental United States, all the way over to the East Coast in California. I believe that this court would have jurisdiction over it, but I think it would be simply because the National Railroad Passenger Corporation is a – it's a little bit of a convoluted way to explain it, but they are a private entity whose sole shareholder is the United States government. I also think it has to do with the independence of the inspector general, which, again, as I was saying a few moments ago, the quality standards of investigation that are promulgated by the city require that the very same protections that the union is claiming here through its collective bargaining agreement are already devolved upon the office of inspector general. They're already required to follow those rules. Suppose that weren't the case. Suppose it's just collectively bargained rules that apply to internal affairs investigations. I think our decision in DHS makes it difficult for you to argue that those collectively bargained procedures should apply when the IG is questioning someone. I would agree with that, Judge Kavanaugh. It would certainly make it a much more difficult mountain to climb. However, I would just submit that, as the court has noted, the arbitrator was not aware and could not, in fact, have been aware of what the court's reasoning was going to be in DHS, and I say was going to be on purpose because, quite simply, it was not a case that had been decided at the time the arbitrator rendered her opinion in a ward. Now, perhaps had that case been decided, it might have provided her with some guidance, although to hear Antrac argue it, the arbitrator is not allowed to look to external sources of the law, which I find interesting because here they're saying she should have been aware of what the restrictions were on the law, but at the same time she's not allowed to consult with them, which is an argument we think is interesting. Can I ask you a slightly different question? Your fruit of the poisonous tree argument, if that's properly before us, I just want to explore the contours of that. When the hearing occurred with internal affairs back after the IG report, so this is, I think, December 3rd of 2012, she was able to dispute whatever the IG had concluded in that conference slash meeting, whatever it was, correct? She being the arbitrator? No, the employee, Sarah Bryant. Are you referring to? So it goes to the IG and it goes back, and there's some kind of conference, I believe, on December 3rd of 2012 where they tell her, they had informed her by letter, and they tell her, you know, here's what the IG found, therefore we're going to discipline slash terminate you. And at that meeting conference, and you may not know, did she have the opportunity, because I believe she did, to dispute what the IG had found and had all the procedural protections at that meeting? I do not know that. I cannot say that with specificity as having not been counsel at that time. What I can say, certainly from what we can glean from the record, is that she was offered an opportunity to resign in lieu of being terminated, and she declined that opportunity. Now, with respect to the fruits argument, which Your Honor just raised, I want to make sure that I cover this one point, if I may. The issue of the poisonous fruit, this is a red herring that the employer is trying to take this and say it was not raised before the district court, and I regret to say that the district court appears to have given credence to that. I don't think it should have, quite simply because this was an argument that was in fact raised. It goes to the entire thrust of what the FOP was saying on appeal to the district court. We refer to, in our briefs, as a stalking horse. We're saying that the Office of Inspector General cannot serve as a stalking horse in the sense that the Amtrak Internal Affairs Bureau just farms out these investigations, says, well, here's a way to get around what our collective bargaining rights that we give to the unions have been for 50 years, and instead what we're going to do is we're just going to send it to the OIG, and then be able to take that prepackaged investigation and do absolutely nothing with it other than just say, oh, well, thank you very much. We are now going to terminate you. It's not. It's the mechanism, the stalking. That's the silver platter doctrine, not the fruit of the poisonous fruit. Arguably so. And it's interesting that Your Honor chose that term of art because the FOP concedes, and we said this in our briefs, that we did not use that term of art, and perhaps silver platter would have been a way to put it, but I suspect that no matter what the term of art was, Amtrak would have objected and said, that's not fair. You're trying to change it late in the game. This was not a new argument. This was an argument that we had raised clearly by saying, you're farming this out. Once you farm it out, fine. How real is that restriction? I mean, the independence of the IG is at the heart of Amtrak's position, and is it realistic that the employer can say, IG, investigate this, this, this, this? I mean, the IG chooses what it investigates, no? Ostensibly it does, but what a gift the Amtrak as a corporation has received from the district court, and what a gift it would be if this court were to uphold that and not reverse. What we would have is a mechanism which is unheard of in labor relations. Here's what we'll do. Let's just turn over all of our internal affairs investigations to the OIG. They can do whatever they like, because they have the statutory independence to do so, and then we'll sit back and then take that prepackaged investigation and hand it to the employee and say you're turning it. You don't deny that the investigation was for, by the inspector general, was centered on fraud and abuse? No, Judge. There's no question what the reasons were for the investigation. And you agree that the inspector general makes a report to the head of Amtrak? That is correct. Okay. Then what does Amtrak to do with that report if the inspector general finds fraud and abuse? I'm glad you asked, Judge Randolph. What they could have done and what they should have done, we argue, is they should have taken the investigation and said, wow, they found some things that we were incapable of finding, and I remind this court that what happened was the Internal Affairs Bureau did conduct its own investigation and exonerated the officer and found a wrongdoing. The inspector general then came to Amtrak and said, here's the fruits of our investigation. What they should have done was they should have said, well, this is interesting material. Let's reopen our previous investigation, confer upon the employee all of the protections required under the collective bargaining agreement, use the material that they have here, and then assess discipline based upon their own investigation, not the OIG's. Or, if I can just follow up, or they could have had a meeting with the employee and confronted the employee with the inspector general's report and asked her whether she denied it or not. That is certainly an option. That's what they did. That Amtrak did not invoke. That's what they did. That's what that December 3rd meeting I asked about is. I think they may have done that, but what was the employee to say at that point? Saying, no, OIG's wrong. I didn't, you know, on the deed and the mortgage and the relationship. You know, they're all wrong. But that wasn't part of the investigation, Judge Kavanaugh. That was part of what I would characterize as a pre-termination conference. It's resign or be fired. What is really to be said? How substantive is that discussion going to be? And even then, it would result in questioning. They would invariably get into a line of questioning. Here we have an IG's report. What say you about it? And at that point, certainly the corporation would have to follow the collective bargaining agreement and confer upon the employee the Weingarten rights that they're expected and so on and so forth. It's very, very critical to understand that the Inspector General was not and would not be infringed upon in any way to do its investigation. Its job, as I started out by saying, is to report and merely to report it did that. And were Amtrak to be ordered by this court through a reversal to do that in future investigations, how, I beg this court or anyone to answer, would the investigation abilities be compromised in any way? That's probably true, but it would open the door to collective bargaining imposing requirements that IGs would have to follow, correct? Well, that's certainly Amtrak's argument, but the FOP sees it differently. We do not see this collective bargaining, notwithstanding the fact that this provision in the collective bargaining. Just on my question. Yes. Would your position open the door to collective bargaining that would result in procedural protections that Inspectors General would have to follow? I do not think so, because the QSI already does it. We're asking that the institution. Suppose the QSI does not do it. I'll add to my hypothetical. Might be a different argument, Judge. I would concede that. I'm not entirely sure I'm following your argument. You're suggesting that in this case, the OIG clearly did not follow the Article 50 procedures. That material is turned over to the employer. The employer can use that material not as a basis for adverse action against the employee, but as a basis for impeachment of the employee when she sticks with the story she used in the internal investigation? Fair question, Judge Peller. But I think the proper answer to it is the employer would not just be used to inform their subsequent investigation. And, again, they conducted an investigation. They have a right to conduct an investigation. The mistake, the fatal error here is that Amtrak took the OIG's prepackaged investigation and said, here's your disciplinary charges. That they could not do. So you're saying that if there were this other layer in it, and maybe the way some of us are reading the record, there was that other layer, but assuming for purposes of conversation that there wasn't, that if the employer comes back armed with the OIG report, my question for you is, what limits on its use would the collective bargaining rights of the employee entail? And what use, consistent with the employee rights that you're asserting, could be made of that OIG report? The investigation for which itself did not comply with the Article 50 rights. What use could Amtrak legitimately make of that under your position? There would be no limits. It is the FOP's position there would be no limits, except for grabbing the investigation and using it as the sole basis for assessing discipline. It could certainly be used to inform a renewed investigation or reopened investigation. They could even use, we would concede the OIG's reports and the statements taken therein, and maybe confront her and say, we would like to ask you some questions. And if the answers that the employee gave were diametrically opposed to those given to the Inspector General, perhaps then there would be an argument for impeachment. We never got there, because instead what Amtrak did was they just grabbed the entire fruits of the investigation and said, you're fired. That's not what happened. There's the November 19th letter that identifies the potential issues and schedules the conference to determine the discipline, if any, to be assessed as a result of your conduct. And then there's a December 3, and she's suspended in the meantime, but there's a December 3 letter which describes what happened at the conference, the conference scheduled in accordance with Rule 34 of the Collective Bargaining Agreement. You were duly represented during this conference, the letter says. No mitigating facts were presented during this conference. Your actions were unprofessional, and you failed to abide by the policies and procedures of the Amtrak Police Department and the Corporation as a result of the decision of Amtrak to assess discipline of dismissal. So it seems like something happened. Failed to abide by the rules and regulations. That's a key phrase right there, failed to abide. That's the point of this, is that they took the Amtrak OIG's report and findings and said, we've determined that you failed to abide. That's the problem, Judge. And the pre-termination conference is really, as I said again, nothing more than a, is there anything you'd like to say on behalf of yourself before we pass sentence, and we're offering you resignation in lieu of termination. I don't think that that is the appropriate standard under the law. Okay. We'll give you a couple minutes back for rebuttal. Thank you. May it please the Court, I'm Thomas Reiner. I represent the National Railroad Passenger Corporation, better known as Amtrak. First, I want to address jurisdiction because the question was raised why we're here. We're here in the right place because 45 U.S.C. Section 153 sets forth the jurisdictional basis for vacating an arbitration award, and it's where parties reside. We could have gone to D.C. where Amtrak has its headquarters and it resides, or we could have gone to Maryland because that's where the grievance resides. We couldn't have gone to Philadelphia. The second question is what process was provided to the grievance, and if you look at the collective bargaining agreement, it's Rule 34 is the disciplinary process that has a number of steps that allows the individual to contest the facts on which Amtrak is relying. And the arbitrator in her decision addresses the Rule 34 process and says that Amtrak complied with Rule 34. There's no procedural basis for disturbing the discipline on the basis of Rule 34. The arbitrator based her decision entirely on Rule 50, the limits on investigation, and concluded that the Amtrak OIG is Amtrak for purposes of application of the collective bargaining agreement. That is the core of her decision, and she made that decision based upon her reading of the Supreme Court's decision in NASA. We submitted as part of our argument the Fourth Circuit's decision in NRC. NRC is the same decision that DHS, this court relied upon, to say that OIG investigations are not subject to bargaining under the federal statute applicable to all agencies covered by the IG Act except one. Amtrak is the only entity that's subject to the IG Act and the Railway Labor Act. And our argument is basically DHS needs to apply equally to Amtrak under the Railway Labor Act as it applies to all federal agencies under the federal bargaining statute. And if that is applied, that means OIG investigations are a prohibited subject of collective bargaining. But Mr. Reiner, what's difficult about this case is it's in a very, very different posture from NRC and from DHS because there's not a question whether the IG's office is being forced to bargain collectively. There's not a question of whether the collective bargaining terms apply to it. The position, as I understand it, is that the terms apply to the employer, which is taking adverse action against its employee. One second distinction, this is coming out of an arbitration. And as we all know, arbitration is subject to the narrowest judicial review known to law. All correct. And you are arguing for a public policy exception to upset what everybody in this room probably has a different idea of, oh, how we would have done it differently were we the arbitrator. But the question is, do you have any authority that supports your position that this is such an egregious arbitration that it falls within the public policy exception? The Inspector General Act, which has as its central principle the independence of OIG and the DHS case. Because once you reach the conclusion – The DHS case is not a public policy exception case. I haven't found it. I didn't see in your brief a single public policy case. It's better. Our case is better than DHS. Because what DHS says, Amtrak, you cannot bargain over OIG investigations. It's precluded because it's controlled by another statute. Okay. You apply that to Amtrak. If Amtrak can't bargain over OIG investigations, an arbitrator can't reach a conclusion that Amtrak has bargained when the contract says nothing and there's no negotiating history and reach a conclusion that a provision of a collective bargaining agreement is applicable to OIG investigations. It is a corollary of the issue not being bargainable. It's applicable to Amtrak. Amtrak is taking the action here. Correct. Amtrak is taking the action here. And Amtrak didn't conduct the investigation. The OIG did. So what you're getting to is actually the fruit of the poisonous tree argument, which was never argued before the arbitrator and certainly wasn't accepted by the arbitrator. The arbitrator didn't hear an argument. Put that aside. Can you just address the poisonous tree argument straight up? Yes. Yes. One, it was laid. Put that aside. If you get to it, Rule 50 is not an exclusionary rule. It wasn't argued as an exclusionary rule because then it would have been applicable to an FBI investigation. What was argued to the arbitrator and which the arbitrator accepted is that the Amtrak OIG equals Amtrak for application of the Rule 50 rule. So what she found in future OIG investigations under this decision, the OIG has to comply with a collectively bargained provision. If you prevail and it goes back to the arbitrator, first of all, they can argue the merits, I assume, because those haven't been addressed. And then secondly, can they raise, because I believe they can, the argument that the IG didn't comply with the quality investigation standards? I don't think this case is postured for remand, Your Honor. It's absolutely postured for remand. And let me explain why. The merits, she's contesting the factual allegations. Those have never been addressed by the arbitrator. Because FOP argued. By remand, I mean remand from the district court to the arbitrator. I understand completely. The FOP argued not that this shouldn't be considered. It didn't say, well, we've got a procedural error. Decide the procedural error. And if we didn't have a procedural error, whether there was merit. It said Amtrak violated Rule 50. End of discussion. You'd never get to a rule. That's not what they said to the arbitrator. Oh, that is distinctly what they said to the arbitrator. No, no, no. There's a paragraph in the arbitration decision which talks about the arguments related to the merits of the allegations in question. And she didn't reach them. Exactly. Because she threw it out on Rule 50. If we disagree with her, agreeing with the district court, disagree with her on the Rule 50, it goes back for the merits. The arbitrator has completed her job. She issued an award. It went up to the district court. The district court, FOP didn't argue, look, if the arbitrator is wrong on Rule 50, we get to go back. They sought to enforce the award. Excuse me, you are the plaintiff. You are the plaintiff. Right. And they moved for enforcement of the award. That's what their cross-motion for summary judgment was. Based on enforcement. They didn't say, well, if we're wrong on Rule 50, this needs to go back to the arbitrator on the merits. That was never the procedural posture they took. And it's inconsistent with their argument before the arbitrator. If you go back to this arbitrator, she could very well say, I'm done. Well, then they get another arbitrator. And the question is they can't rely, because of an order from this court, and the district court, they can't rely on Rule 50. Right. Okay. So you're positing going back to have another hearing that reaches the merits. Absolutely. Because page 15 of the arbitrator's decision, it is the union's additional position that the corporation failed to demonstrate just cause for Grievin's termination on the merits. Grievin answered the questions asked during the two investigations as truthful as she could, her understanding that she was Parker's tenant, et cetera, et cetera. And that's never been addressed by the arbitrator. So even if you win on the Rule 50, you've got to go back and deal with that. The problem I'm having is you're sort of positing the arbitrator like the district court, and it's not. I mean, the arbitrator decides his decision under the Railway Labor Act. Precisely. Subject to final virtually zero review. With the exception of the public policy exception, which this court recognized in Delta. And if this is not a case for the public policy exception, then there is no public policy exception, because you're never going to find anything that's going to have a more express conflict between a federal statute and an arbitrator's award that says Amtrak OIG is Amtrak for purposes of application of the collective bargaining agreement. That's what I read under NASA, which is totally contrary to the IG Act and totally contrary to this court's decision in DHS. Let me ask you a couple of questions. Could an OIG voluntarily adopt procedures that tracked the Article 50 procedures? If the OIG has independence, it can do what it wants to. It could say, I'm going to comply with the procedures, and next they say, it's not going to. And could an OIG voluntarily submit to collective bargaining if it thought we're going to have better relations with the employees, we're going to have better relations with the agency, we're going to be more effective in our investigatory function? No, not consistent with DHS, I think. And the whole central issue is DHS is a bargainability determination. Once you say something is outside of collective bargaining, the collective bargaining agreement can't be the reference point for what the OIG does. Can I interrupt you for a second? Yeah. The inspector general for Amtrak is appointed and nominated and confirmed by the Senate? Yes. So the inspector general is the inspector general of federal employees? Who pays the inspector general? They are placed in agencies, and with respect to Amtrak, they are placed within the Amtrak structure, but they're independent with respect to their investigatory function. Who pays them? So it is under the Amtrak budget. So the Amtrak is? Yes. Is Amtrak itself subject to the Fourth Amendment or the Fifth Amendment of the Constitution? There is precedent finding constitutional provisions applicable to Amtrak, but they're not complete. There are a number of cases, for example, First Amendment advertising issues. They are subject to First Amendment. Right. For certain purposes, they have been found subject to certain prosecutions. Amtrak, please consider themselves bound by the Fourth Amendment. They do Miranda Rice and they take account. Well, they don't prosecute. But they do. If they're sitting in a police function, if the FOP is operating in a police function, they're actually deputized under state law. Right. So, I mean, the answer is they accord with all kinds of law enforcement constitutional constraints, and they want to. It's in their interest to do that because that's what preserves their ability then to use that evidence in collaboration with local or federal law enforcement. And they're required to do in certain circumstances. Exactly. Can I just follow up on the question I was asking? So, do you agree that Garrity v. New Jersey applies to Amtrak? The Amtrak OIG, in fact, took that position and applied Garrity rights. Yes. So that wasn't disputed. Let's suppose that, well, did the union argue that the inspector general violated the inspector general's policies and procedures? No. Just Rule 50. Just Rule 50. The collective bargaining agreement. That was the core of their argument. The core, but did they argue? The council somewhere lurking is the council, the quality investigation standards. Right, right. You know, look, the CGQSI, we're not before the arbitrator in the district court level. This whole attenuated view is that ultimately the arbitration award doesn't make a difference because the QSI incorporates Rule 50. Well, the QSI doesn't say it incorporates collectively bargained terms, so it just doesn't get you there. But, Mr. Reiner, I think the point is you're asking for extraordinary relief here. You're saying that the arbitrator, what she has done, which we have to sort of look at to a certain degree as a black box, because we certainly don't have a review of that, but what she has done is so intrusive of the OIG that we have to view it as contrary to public policy. And it's not that the quality standards are enforceable or law or whatever, but that they're so closely aligned with the Article 50 rights that the notion that it's going to hobble the OIG to allow this arbitral award to stand is a little perplexing. Well, let's play that out. First of all, it could lead to a termination of an interrogation. What could? Under the Weingarten portion of it, the individual could ask for a union representative. If the OIG has some reason why this interview needs to be done now, then it has to terminate the investigation first. But Weingarten they already comply with, and that's not under dispute. No, no, no, they don't. I thought you just answered Judge Randolph. No, no, no, no. I don't think so. Weingarten is not applicable to Amtrak. It's an NLRA view. It's not applicable under the Railway Labor Act. I thought that was NASA. Here's the real point. You're opening up collective bargaining to 13 Amtrak unions to bargain different OIG investigations. And let me tell you, if you go across the industry, there are all sorts of limitations on investigations. Pilots often have things where you get statements of charges, all documents ahead of time. That becomes bargainable if you do not apply the public policy exception in this case. So here, it didn't come up when the bargaining took place whether the OIG was in or out. But certainly going forward under DHS, the inspector general would say we need a carve-out. We're not part of that, right? And the collective bargaining agreement could be explicit on that. I mean, probably that's all going to be sorted out. The history is this. It was not bargained because Rule 50 preceded Amtrak being under the OIG. In all the years of practice, no issue of Rule 50 application has ever been applied to an OIG investigation. So you cannot consistently say that this issue is not bargainable under DHS, but an arbitrator award that applies, says Rule 50 is applicable to the Amtrak OIG, is not grounds for vacating under public policy. Those two concepts don't work together because they're not respecting in the arbitration context the fact that the issue is not bargainable. If the issue is not bargainable, a collective bargaining provision addressing it is void ab initio and cannot be enforced. Thank you. Thank you. We'll give you two minutes for rebuttal. A couple of points to what Mr. Reiner said a few minutes ago. I'm sorry, Jeff. Can I just ask you, is there a point short of having submitted to arbitration where Amtrak could have said, whoa, we're not going to go there because we're at risk of making the OIG sort of implicitly subject to collective bargaining rights, and we don't want to do that. Was there a moment when they could have objected before this became signed, sealed, and delivered as an arbitral award? Well, I think that goes to one of the points I was about to say, which is this is not a negotiability appeal. This is not a scope of negotiations determination. This is simply confirmation or abacater of an arbitrator's award. And the proper venue where Amtrak could do that, it should have done that through a negotiability appeal. This provision in the collective bargaining agreement has been there for half a century. Let me say that again, 50 years. And they're saying now, well, we didn't know. We had we known. This is going to upend OIG. Inspector General's been around since the 70s. It was reformed in 2008. Has Rule 50 ever been applied to OIG investigations? No. Not that I'm aware of anyway. Was it even applied to an OIG investigation here? Beg your pardon? Was it applied to an OIG investigation here? Well, I think Rule 50 was certainly discussed by the arbitrator. But, again, that goes to the QSI. It goes to what the OIG is not. Rule 50 does not impose upon its Inspector General any restrictions beyond that which it imposes upon itself. Well, in fact, it's not imposing them on the Inspector General. It's imposing them on the employer taking adverse action against employees. That's correct. The QSI has restrictions it places on itself, and then the employer is restricting it again. Even in the Joint Appendix to page 110, there's a footnote that says, for further details, see Miranda v. Arizona. Kalkine v. United States, also consult agency requirements related to other rights, such as NASA v. FLRA. What Amtrak had to do and all it had to do was simply take the investigation and say, what are we going to do with this now? We have to do our own investigation. They should not have taken the prepackaged one and just said, we're going to adopt it as our own. Thank you. The case is submitted.
judges: Kavanaugh, Pillard, Randolph